UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTINA S. ROJAS,

    Plaintiff,

v.                                        Case No. 1:07-cv-1035

                                          Hon. Robert J. Jonker

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____/

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits (DIB) and supplemental security income (SSI).

Plaintiff was born on January 20, 1971 and completed three years of college (AR 64, 75).[1] She alleged a disability onset date of March 15, 2003 (AR 64). Plaintiff had previous relevant employment as a cashier, childcare worker, security guard and teacher's aid (AR 70, 403). Plaintiff identified her disabling conditions as radiculopathy and related disorders in the lower back, type 2 diabetes, obesity, high blood pressure and swelling of the feet and ankles (AR 69). She explained that these conditions limited her ability to work because: she experienced swelling in the lower extremities if she stood too long; "it hurts to lift;" it was hard for her to stand or sit for an extended period of time; she had pain in the sciatic area making bending very difficult; at times her leg "goes

---

[1] Citations to the administrative record will be referenced as (AR "page #").

out" while walking; she has had a couple of blackouts where her blood sugar level dropped too low and her blood pressure went too high; she had limited mobility at times; and she was in pain most of the day (AR 69). After administrative denial of plaintiff's claim, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying these claims on May 9, 2007 (AR 15-21). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988).

Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity

3

(determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases. *See Bailey v. Secretary of Health and Human Servs.*, No. 90-3265, 1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II.  ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. Following the five steps, the ALJ initially found that plaintiff had not engaged in substantial gainful activity since the alleged onset of disability (AR 20). Second, the ALJ found that plaintiff had the following severe impairments: obesity; diabetes mellitus; back pain with sciatica; and depression (AR 20). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 20).

The ALJ decided at the fourth step that plaintiff has the residual functional capacity (RFC) to perform the following:

> simple, unskilled sedentary work with no use of ladders, ropes, or scaffolds; with no more than occasional use of stairs, balancing, kneeling, crouching, crawling, bending, twisting, or over-the-shoulder reaching; with no use of foot controls; with avoidance of fumes, odors, dust, gases, scents, chemicals, extreme cold, heat or humidity; with no work around unprotected moving machinery or at unprotected heights; and with no use of vibratory tools. Additionally, she is unable to maintain intense concentration and is limited to jobs involving no more than minimal contact with coworkers or the general public.

(AR 20). The ALJ found that plaintiff could not perform any of her past relevant work (AR 21).

At the fifth step, the ALJ determined that plaintiff could perform a significant range of sedentary work in Michigan, including the following jobs: bench assembler (4,200 jobs); visual inspector (1,800 jobs); and sorter/packager (3,400 jobs) (AR 21, 405). Accordingly, the ALJ determined that plaintiff was not under a disability and entered a decision denying benefits (AR 21).

### III. ANALYSIS

Plaintiff raises three issues for review.

> **A. Did the Commissioner err, as a matter of law, in failing to accord adequate weight to the opinions and assessments of plaintiff's long-time treating physician, Dr. Sasse?**

A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). The agency regulations provide that the Commissioner will give controlling weight to a treating medical source's opinion on the issues of the nature and severity of a claimant's impairments, if that opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Walters*, 127 F.3d at 530, *quoting* 20 C.F.R. § 404.1527(d)(2). An ALJ is not bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation. *Buxton*, 246 F.3d at 773; *Cohen v. Secretary of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). Finally, the ALJ must articulate good reasons for

not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004).

Plaintiff's counsel submitted two documents in which plaintiff's treating physician, Troy Sasse, D.O., evaluated her ability to perform work related activities. In the first assessment, dated August 7, 2006, Dr. Sasse found that plaintiff could perform only restricted activities during an eight-hour workday as follows: sit for 1 to 2 hours, stand 1/2 to 1 hour, walk 1/2 hour and sit/stand as needed for 1 hour (AR 328). In support of these findings, the doctor noted that plaintiff suffered from morbid obesity, diabetes mellitus, and coronary artery disease, and that she became "severely fatigued with even sedentary activity" (AR 328). The doctor found that plaintiff could occasionally lift 5 pounds, but never lift 10 pounds (AR 328). Plaintiff could not climb due to her large body habitus and had numerous environmental restrictions (working at heights, near moving machinery, etc.) due to her morbid obesity and coronary artery disease (AR 329). Plaintiff's diabetes affected her vision, resulting in transient periods of blurred vision (AR 330). The doctor found that plaintiff's subjective complaints were consistent with the objective medical findings as follows, "the patient['s] physical exam in the office is consistent with a morbidly obese woman who can complete only sedentary activities" (AR 331). The doctor further noted that "[t]his disability is not expected to be permanent as this patient with weight loss [and] diabetes treatment is capable of recovery" (AR 331).

In March 2007, Dr. Sasse prepared an "Obesity Residual Functional Capacity Questionnaire" (AR 355-58). This document listed plaintiff's height as 5' 4 1/2" and her weight as 327 pounds (AR 355). The doctor stated that she suffered from diabetes, high blood pressure and back pain (AR 355). Plaintiff also suffered from drowsiness and fatigue from blood sugar changes

(AR 355). The doctor opined that plaintiff could only sit for 30 minutes and stand for 20 minutes before requiring a break (AR 356).

The ALJ's evaluated Dr. Sasse's opinions as follows:

> [N]one of the doctors who have seen or examined the claimant has expressed a credible opinion that she is disabled or in anyway limited to a greater degree than that found by the undersigned. The undersigned is well aware of the residual functional capacity assessment statements from the claimant's family physician, Dr. Sasse, dated August 7, 2006, and March 1, 2007 (Exhibit 14F, 16F). In the statements, Dr. Sasse indicated that the claimant had limitations that, essentially, would preclude her from being able to perform any jobs on a regular basis. The Administrative Law Judge has carefully evaluated these statements under the guidelines set out in sections 404.1527 and 416.927 of Regulations Nos. 4 and 16. In doing so, it must be concluded that the statements are not credible, reliable, or controlling in anyway [sic]. The limitations are inconsistent with the overall evidence of record, as discussed above, and are not even supported by any clinical or other findings presented by Dr. Sasse, himself. It should be noted that, although this doctor suggested considerable limitations for the claimant that would preclude work, he also indicated that plaintiff was capable of "sedentary activities" (Exhibit 14F), and was capable all of [sic] "low stress" jobs (Exhibit 16F). Such limitations would not preclude the jobs that the undersigned has determined that the claimant is capable of performing.

(AR 19-20).

Plaintiff contends that the ALJ erred in equating Dr. Sasse's statement that her ability to perform "sedentary activities" supported a finding that she could perform "sedentary work." Plaintiff's Brief at 13. Plaintiff relies on SSR 96-5p, entitled "Medical Source Statement vs. RFC Assessment," which provides in pertinent part as follows:

> A medical source's statement about what an individual can still do is medical opinion evidence that an adjudicator must consider together with all of the other relevant evidence (including other medical source statements that may be in the case record) when assessing an individual's RFC. Although an adjudicator may decide to adopt all of the opinions expressed in a medical source statement, a medical source statement must not be equated with the administrative finding known as the RFC assessment. Adjudicators must weigh medical source statements under the rules set out in 20 CFR 404.1527 and 416.927, providing appropriate explanations for accepting or rejecting such opinions.

7

>From time-to-time, medical sources may provide opinions that an individual is limited to "sedentary work," "sedentary activity," "light work," or similar statements that appear to use the terms set out in our regulations and Rulings to describe exertional levels of maximum sustained work capability. Adjudicators must not assume that a medical source using terms such as "sedentary" and "light" is aware of our definitions of these terms. The judgment regarding the extent to which an individual is able to perform exertional ranges of work goes beyond medical judgment regarding what an individual can still do and is a finding that may be dispositive of the issue of disability.

>At steps 4 and 5 of the sequential evaluation process in 20 CFR 404.1520 and 416.920, the adjudicator's assessment of an individual's RFC may be the most critical finding contributing to the final determination or decision about disability. Although the overall RFC assessment is an administrative finding on an issue reserved to the Commissioner, the adjudicator must nevertheless adopt in that assessment any treating source medical opinion (i.e., opinion on the nature and severity of the individual's impairment(s)) to which the adjudicator has given controlling weight under the rules in 20 CFR 404.1527(d)(2) and 416.927(d)(2).

Here, it appears that the ALJ equated Dr. Sasse's statement regarding plaintiff's ability to perform sedentary activities with the agency's definition of "sedentary activities," contrary to SSR 96-5p. The doctor's opinion appeared more restrictive than the ALJ concluded, i.e., while the doctor found that plaintiff can complete only sedentary activities, she is also severely fatigued with completing those activities (AR 328, 331). In addition, after reviewing these records, the court concludes that the ALJ has failed to articulate good reasons for not crediting Dr. Sasse's opinions. *See Wilson*, 378 F.3d at 545. While plaintiff submitted dozens of pages of medical records regarding her treatment by Dr. Sasse commencing in 2003, the ALJ did not address those records in any detail. The transcript contains well over 200 pages of medical records. It is difficult to reconcile this volume of records with the ALJ's brief summary of plaintiff's medical history and his observation that "there is a paucity of objective medical evidence of record to document the existence of any medically determinable impairment that possibly could cause the severe, totally disabling symptomatology that is alleged" (AR 18).

Accordingly, this matter should be reversed and remanded pursuant to paragraph four of 42 U.S.C. § 405(g) for a re-evaluation of Dr. Sasse's medical records and opinions.

### B.    Is the Commissioner's credibility determination supported substantial evidence?

An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531. The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). *See Casey v. Secretary of Health and Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993) (an ALJ's credibility determinations are accorded deference and not lightly discarded). Substantial evidence supports the ALJ's credibility determination in this case.

Plaintiff testified that she was unable to work due to a number of medical problems: obesity; diabetes that causes blurred vision, weakness, tiredness and fatigue, which is severe about two times a week; and pain in her right hip with radiculopathy, which has been present since her pregnancy in 2003 (AR 16). These problems result in the ability to stand or sit for only about 15 minutes at a time and the ability to carry only five pounds (AR 16). In addition, she suffers from depression with crying spells and does not like crowds because she feels uncomfortable about her obesity (AR 16).

The ALJ made the following credibility determination:

[I]n assessing the claimant's credibility, the undersigned notes that the record fails to reflect that the claimant has undergone any surgical procedures or has required any hospitalizations; nor has she undergone any other aggressive methods of pain or other symptom relief treatment. She has never sought [or] received any treatment from any mental health practitioner, nor has she sought the help of any specialist in the fields of orthopedics or endocrinology. She has taken some medications, but these do not include any real strong prescription analgesics, and she complained of

>no significant side-effects from the medications that she does take, other than some tiredness. Certainly, her pain and other symptoms must not be as severe as she alleged.
>
>Also, despite alleging a total inability to work, the claimant admitted at the hearing that she is able to take care of all her own personal needs, and spends time during the day taking her older daughter to and from school, taking care of her three-year-old daughter at home, washing dishes occasionally, folding laundry, and going shopping on occasion. She also said that she does word search puzzles, reads, and goes to church about once a month. Also, in a Function Report that the claimant filled out on April 1, 2006, she indicated that she takes care of her toddler, prepares quick meals, washes dishes, washes laundry, and goes grocery shopping. She indicated that she reads frequently, and was currently enrolled in college to finish her Bachelor's degree. The claimant related to Dr. Davidson [a consulting psychologist] in May 2006, that her activities included taking classes, doing needlepoint, reading, and going on the Internet. She told him that she was capable of folding clothes, cleaning sinks, doing dishes, and taking care of her daughter. Certainly, these are not the activities and abilities of an individual who is completely unable to engage in any substantial gainful activity and clearly reflect the ability to perform the limited work activities as found by the undersigned. The fact that claimant is able to read frequently and do puzzles suggests that her pain and other symptoms are not so severe as to interfere with her ability to concentrate for sustained periods of time.

(AR 19).

The ALJ's credibility evaluation is supported by substantial evidence. The ALJ found discrepancies among the medical records, plaintiff's testimony, and other evidence sufficient to discount plaintiff's credibility. *See Walters*, 127 F.3d at 531. There is no compelling reason to disturb the ALJ's credibility determination. *See Smith*, 307 F.3d at 379. Accordingly, plaintiff's claim that the ALJ improperly evaluated her credibility should be denied.

> **C.  Did the ALJ fail to apply SSR 02-01p in evaluating the severity of plaintiff's extreme obesity, as indicated by her height of 5 feet 5 inches and her weight of 324 pounds which equals a BMI of 53.9 or Level III, morbid obesity, on her ability to perform full continuous work.**

Finally, plaintiff contends that the ALJ did not perform an individualized assessment of the impact of her obesity. Although obesity was deleted from the Listing of Impairments in 20 C.F.R., subpart P, Appendix 1, the Commissioner should still address the issue:

> [E]ven though we deleted listing 9.09, we made some changes to the listings to ensure that obesity is still addressed in our listings. In the final rule, we added paragraphs to the prefaces of the musculoskeletal, respiratory, and cardiovascular body system listings that provide guidance about the potential effects obesity has in causing or contributing to impairments in those body systems. See listings sections 1.00Q, 3.00I, and 4.00F. The paragraphs state that we consider obesity to be a medically determinable impairment and remind adjudicators to consider its effects when evaluating disability. The provisions also remind adjudicators that the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately. They also instruct adjudicators to consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity.

SSR 02-01p.

The ALJ recognized that plaintiff is morbidly obese. However, the ALJ did not mention SSR 02-01p in his decision or give any meaningful discussion of the effect of plaintiff's obesity as suggested in the guidelines. By finding that plaintiff suffered from a severe impairment of obesity, the ALJ acknowledged that her obesity "significantly limits [her] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Although the ALJ discussed the concept of obesity in general terms, he did not identify plaintiff's level of obesity or discuss the extent to which obesity affected her ability to function. The court agrees with plaintiff that the ALJ should have addressed the manner in which the severe impairment of obesity affected her ability to work. Accordingly, the undersigned recommends that this matter be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to re-evaluate plaintiff's obesity as outlined in SSR 02-01p.

### IV.     Recommendation

For these reasons, I respectfully recommend that the Commissioner's decision be **reversed and remanded** pursuant to sentence four of 42 U.S.C. § 405(g).  On remand, the Commissioner should re-evaluate of Dr. Sasse's medical records and opinions and re-evaluate plaintiff's obesity as outlined in SSR 02-01p.


Dated:  January 26, 2009                          /s/ Hugh W. Brenneman, Jr.
                                                  HUGH W. BRENNEMAN, JR.
                                                  United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).